UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

ABRAHAM GUR and JORGE MALDONADO, :
on behalf of themselves and on behalf of all other :
similarly situated persons, :

                                       :

            Plaintiffs, :

                                       :

     v. :

                                       :

BEN'S LUXURY CAR AND LIMOUSINE :
SERVICE, INC., HENRY ZILBERMAN, :
ABRAHAM MZOUZ, AND PINHAS GADI, :

                                       :

           Defendants. :

------------------------------------------------------------------ x

Civil Action No.  13-cv-3330 (PKC) (VVP)


## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'<br>MOTION FOR CONDITIONAL CERTIFICATION</u>


THOMPSON WIGDOR LLP

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845

*Attorneys for Plaintiffs
and the Putative Collective*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

    Overview ................................................................................................ 2

    The Named Plaintiffs ............................................................................ 2

    Defendants' Business and Unlawful Wage Practices ............................ 3

    Other Similarly Situated Individuals .................................................... 5

ARGUMENT ................................................................................................... 6

    I.    CONDITIONAL CERTIFICATION IS APPROPRIATE ................... 6

        A.  The FLSA's Opt-In Requirements .................................................. 6

        B.  The Two Phase Certification Process For FLSA Collective
            Actions ........................................................................................ 7

        C.  Plaintiffs Have Made the Required Showing That They Are
            Similarly Situated to the Members of the FLSA Collective ............. 9

    II.   COURT-AUTHORIZED NOTICE IS NECESSARY AND
        APPROPRIATE ................................................................................ 12

    III.  EXPEDITED DISCLOSURE OF NAMES AND CONTACT
        INFORMATION ............................................................................... 14

CONCLUSION ................................................................................................. 17

## TABLE OF AUTHORITIES

### CASES

*Amendola v. Bristol-Myers Squibb Co.,*
    558 F. Supp. 2d 459 (S.D.N.Y. 2008) ................................................................. 9

*Avila v. Northport Car Wash, Inc.,*
    No. 10-cv-2211 (LDW) (AKT), 2011 WL 833642 (E.D.N.Y. 2011) ............................. 15

*Braunstein v. E. Photographic Laboratories, Inc.,*
    600 F.2d 335 (2d Cir. 1978) ................................................................................... 12

*Brock v. Superior Care, Inc.,*
    840 F.2d 1054, 1062 (2d Cir. 1988) ....................................................................... 15

*Cano v. Four M Food Corp.,*
    No. 08 CV 3005, 2009 WL 5710143 (E.D.N.Y. 2009) ........................................... 15

*Cunningham v. Elec. Data Systems Corp.,*
    No. 06 CIV 3530 (RJH), 2010 WL 5076703 (S.D.N.Y. 2010) ........................... 7, 8, 9

*Davis v. Abercrombie & Fitch,*
    No. 08 CIV 1859 (PKC), 2008 WL 4702840 (S.D.N.Y. 2008) ................................. 16

*Fasanelli v. Heartland Brewery, Inc.,*
    516 F.Supp.2d 317 (S.D.N.Y. 2007) ....................................................................... 10

*Foster v. Food Emporium,*
    No. 99 CIV 3860 (CM), 2000 WL 1737858 (S.D.N.Y. 2000) ............................. 7, 13

*Gambino v. Harvard Protection Services LLC,*
    2011 WL 102691 (S.D.N.Y. 2011) ........................................................................ 13

*Guan Ming Lin v. Benihana Nat'l Corp.,*
    No. 10 CIV 1335 (VM), 2010 WL 5129013 (S.D.N.Y. 2010) ............................. 7, 13

*Hallissey v. Am. On-line, Inc.,*
    No. 99 Civ. 3785, 2008 WL 465112 (S.D.N.Y. 2008) .............................................. 9

*Harrington v. Educ. Mgmt. Corp.,*
    146 Lab. Cas. (CCH) 34554 (S.D.N.Y. 2002) ....................................................... 15

*Hoffman-LaRoche, Inc. v. Sperling,*
    493 U.S. 165 (1989) ..................................................................................... 6, 12, 14

*Hoffman v. Sbarro,*
    982 F. Supp. 249 (S.D.N.Y. 1997) ...............................................*passim*

*Lee v. ABC Carpet & Home,*
    236 F.R.D. 193 (S.D.N.Y. 2006) ......................................... 8-9, 10-11

*Lynch v. United Services Auto. Ass'n.,*
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) ...............................7, 8, 13, 14

*McBeth v. Gabrielli Truck Sales, Ltd.,*
    No. 09 CV 04112 (LDW), 2011 WL 338123 (E.D.N.Y. 2011) .......................................16

*Mentor v. Imperial Parking Systems, Inc.,*
    246 F.R.D. 178 (S.D.N.Y.2007) .........................................................8

*Morales v. Plantworks, Inc.,*
    No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. 2006) .............................8

*Myers v. Hertz Corp.,*
    624 F.3d 537 (2d Cir. 2010) ...............................................*passim*

*Ouedraogo v. A-1 Intern. Courier Service, Inc.,*
    2013 WL 3466810 (S.D.N.Y. 20103) .................................................10

*Pippins v. KPMG LLP,*
    2012 WL 19379 (S.D.N.Y. 2012) ................................................ 11-12

*Raniere v. Citimortgage, Inc.,*
    827 F.Supp. 2d 294 (S.D.N.Y. 2011) ..............................................15

*Realite v. Ark Restaurants Corp.,*
    7 F. Supp. 2d 303 (S.D.N.Y. 1998) ...............................................15

*Sherrill v. Sutherland Global Services, Inc.,*
    487 F.Supp.2d 344 (W.D.N.Y. 2007) .............................................13

*Spicer v. Pier Sixty LLC,*
    269 F.R.D. 321 (S.D.N.Y. 2010) .....................................................8

## STATUTES

29 U.S.C. § 216(b) ..........................................................................*passim*

29 U.S.C. § 255(a) ..................................................................................15

29 U.S.C. § 626(b) ....................................................................................6

Fed. R. Civ. P. 23................................................................................................................6, 8

NYLL §191.............................................................................................................................2

NYLL §193.............................................................................................................................2

NYLL §195.............................................................................................................................2

NYLL §196-d..........................................................................................................................2

Plaintiffs Abraham Gur and Jorge Maldonado ("Plaintiffs"), on behalf of themselves and all other similarly situated employees, by and through undersigned counsel, Thompson Wigdor LLP, hereby submit this motion for conditional certification of their claims under the Fair Labor Standards Act ("FLSA"), court-facilitated notice to similarly situated persons, and expedited disclosure of contact information.

## PRELIMINARY STATEMENT

Plaintiffs seek conditional certification of the collective group of persons employed by Defendants Ben's Luxury Car and Limousine Service, Inc. ("Ben's"), Henry Zilberman, Abraham Mzouz and Pinhas Gadi (the "Individual Defendants") (altogether "Defendants"), as "Drivers" or "Chauffeurs" and any and all other similarly situated positions ("Drivers/Chauffeurs"), who were not paid minimum wage for all hours worked and/or not paid overtime compensation in violation of the FLSA for the period of three years prior to the filing of the Complaint to the date of the final disposition of this action (the "Proposed Collective"). As explained in detail below, conditional certification of this collective action, as well as the other relief sought, is appropriate because Plaintiffs can easily make the required "modest factual showing" that the members of the putative Proposed Collective were subjected to Defendants' common unlawful policies and practices which resulted in, *inter alia*, failure to pay the requisite premium overtime wages under the FLSA. Accordingly, in fulfillment of the broad remedial purposes of the FLSA, this Court should grant conditional certification as soon as possible to provide potential members of the Proposed Collective an opportunity to stem their daily loss of wages unlawfully denied to them by Defendants.

## STATEMENT OF FACTS

### Overview

On June 11, 2013, Plaintiffs Abraham Gur and Jorge Maldonado filed the Complaint in this action alleging that Defendants violated the FLSA and New York Labor Law ("NYLL") by, *inter alia*, failing to pay Drivers/Chauffeurs the requisite premium overtime compensation for all hours worked in excess of 40 per week.  In addition to the FLSA and NYLL claims for overtime wages, Plaintiffs have also alleged causes of action under the NYLL for, *inter alia*, unlawful wage deductions under NYLL §193, withholding of gratuities under NYLL §196-d, failure to provide timely and agreed upon wages under NYLL §191, and failure to provide accurate wage statement under NYLL §195.  Furthermore, to the extent Defendants incorrectly claim that Plaintiffs were independent contractors, and therefore argue they are not covered "employees" as defined by the FLSA or NYLL, Plaintiffs have asserted causes of action for breach of contract, fraud, and unjust enrichment pursuant to New York State common law.  See Declaration of David E. Gottlieb ("Gottlieb Decl."), Ex. A.

Following the commencement of this action, on July 12, 2013, Defendants filed a pre-motion conference letter regarding a proposed partial motion to dismiss Mr. Gur's Second through Ninth Causes of Action.  See Dkt. No. 13.  On July 15, 2013, Defendants interposed an Answer as to Mr. Gur's First Cause of Action for overtime violations pursuant to the FLSA and Mr. Maldonado's Complaint in its entirety.  See Dkt. No. 15.  On July 23, 2013, Hussain Mohammad opted-in to this action as a party plaintiff.  See Dkt. No. 17.

### The Named Plaintiffs

Plaintiff Abraham Gur was employed by Defendants as a Driver/Chauffeur from approximately December 2009 through January 11, 2011.  See Declaration of Abraham Gur

("Gur Decl.") at ¶ 2.  Throughout the duration of his employment, Mr. Gur was misclassified as an "independent contractor."  Id. at ¶ 3.  During the period of his employment, Mr. Gur provided transportation services that were integral to Defendants' business and Defendants exerted control over the terms and conditions of his employment, controlled his ability to earn profits, controlled his hours and the duration of the work relationship.  Id. at ¶ 4.

Plaintiff Jorge Maldonado was employed by Defendants as a Driver/Chauffeur from approximately May 2001 through April 2013.  See Declaration of Jorge Maldonado ("Maldonado Decl.") at ¶ 2.  Throughout the duration of his employment, Mr. Maldonado was misclassified as an "independent contractor."  Id. at ¶ 3.  During the period of his employment, Mr. Maldonado provided transportation services that were integral to Defendants' business and Defendants exerted control over the terms and conditions of his employment, controlled his ability to earn profits, controlled his hours and the duration of the work relationship.  Id. at ¶ 4.

Opt-in Plaintiff Hussain Mohammad was employed by Defendants as a Driver/Chauffeur from approximately 2001-2012.  See Declaration of Hussain Mohammad ("Mohammad Decl.") at ¶ 2.  Throughout the duration of his employment, Mr. Mohammad was misclassified as an "independent contractor."  Id. at ¶ 3.  During the period of his employment, Mr. Mohammad provided transportation services that were integral to Defendants' business and Defendants exerted control over the terms and conditions of his employment, controlled his ability to earn profits, controlled his hours and the duration of the work relationship.  Id. at ¶ 4.

**Defendants' Business and Unlawful Wage Practices**

At all relevant times, Plaintiffs' primary duties were to provide transportation services largely to employees of large companies who had contracts with Defendants.  Gur Decl. at ¶ 5; Maldonado Decl. at ¶ 5; Mohammad Decl. at ¶ 5.  Defendants do not hold themselves out as a

taxicab company; rather, on its website, Defendants describe the company as providing "customized VIP limo services." Gottlieb Decl., Ex. B.  In fact, the word "taxi" cannot be found anywhere in Defendants' name or website.  Gottlieb Decl. at ¶ 3.  Defendants do not maintain any permanent "stands" at any airport, train station, or other places where demands for transportation may be expected.  Gur Decl. at ¶ 6; Maldonado Decl. at ¶ 6; Mohammad Decl. at ¶ 6.  Drivers are not permitted by Defendants to "cruise" for passengers.  Rather, Drivers must only respond to calls from a dispatcher.  The fares for each assignment are predetermined pursuant to contracts between Defendants and their clients.  Gur Decl. at ¶¶ 7, 8; Maldonado Decl. at ¶¶ 7, 8; Mohammad Decl. at ¶¶ 7, 8.

At all times, Defendants misclassified Plaintiffs and all other Drivers/Chauffeurs as "independent contractors" when they were in fact employees.  Defendants exerted total control over the terms and conditions of Plaintiffs' employment, including but not limited to, controlling the hours of work, controlling the rates and fares charged, controlling the amount of gratuity paid, controlling the types of cars used by Drivers, controlling the amount of compensation Drivers could earn, and prohibiting Drivers from working for other transportation companies. Gur Decl. at ¶¶ 3, 4, 9; Maldonado Decl. at ¶¶ 3, 4, 9; Mohammad Decl. at ¶¶ 3, 4, 9.  Despite the control Defendants exerted over Plaintiffs and all other Drivers/Chauffeurs, Defendants required Plaintiffs Gur, Maldonado and Mohammad and other  Drivers/Chauffeurs to execute documents purporting to misclassify them as "independent contractors," in an attempt to avoid compliance with, *inter alia*, the FLSA and NYLL.  Gottlieb Decl. Ex. A at ¶¶ 24 – 27, 33; Maldonado Decl. at ¶ 10; Mohammad Decl. at ¶ 10.

During the Collective Period, Plaintiffs and the Proposed Collective worked approximately 60 to 75 hours per week.  Gur Decl. at ¶ 10; Maldonado Decl. at ¶ 11;

Mohammad Decl. at ¶ 11.  However, Defendants failed to pay Plaintiffs and the Proposed

Collective with any premium overtime compensation for hours worked in excess of 40 hours per

week.  Gur Decl. at ¶ 11; Maldonado Decl. at ¶ 12; Mohammad Decl. at ¶ 12.  While it is in

dispute whether Plaintiffs were entitled to premium overtime compensation, it is not in dispute

that Plaintiffs were never paid premium overtime compensation.

During the Collective Period, Defendants also agreed to pay Plaintiffs and the Proposed

Collective a percentage of the total amount a customer paid for a trip and the total amount of

gratuities paid by the customers.  Gur Decl. at ¶ 13; Maldonado Decl. at ¶ 14; Mohammad Decl.

at ¶ 14.  However, Defendants did not pay Plaintiffs and the Proposed Collective at these agreed

upon rates.  Gur Decl. at ¶ 14; Maldonado Decl. at ¶ 15; Mohammad Decl. at ¶ 15. Rather,

Defendants misrepresented to Plaintiffs and the Proposed Collective the actual rate being

charged to customers for their routes and services.  Gur Decl. at ¶ 15; Maldonado Decl. at ¶ 16;

Mohammad Decl. at ¶ 16.  Defendants then paid Plaintiffs and the Proposed Collective at an

artificially lowered, misrepresented rate.  Gur Decl. at ¶ 16; Maldonado Decl. at ¶ 17;

Mohammad Decl. at ¶ 17.  Moreover, Defendants failed to pay Plaintiffs and the Proposed

Collective the full amount of gratuities paid by customers, as had been promised.  Gur Decl. at ¶

17; Maldonado Decl. at ¶ 18; Mohammad Decl. at ¶ 18.

**Other Similarly Situated Individuals**

Defendants have employed well in excess of 200 other employees in the Proposed

Collective during the relevant statutory period.  See Gottlieb Decl., Ex. A at ¶¶ 56, 75; Gur

Decl. at ¶ 18; Maldonado Decl. at ¶ 19; Mohammad Decl. at ¶ 19.  All of these individuals were

treated similarly with respect to not only violations of the FLSA, but the numerous other

unlawful compensation policies and practices described herein.  Simply put, Defendants

subjected Plaintiffs and all members of the Proposed Collective to the same, uniform policies and practices which violated the law.  See Gottlieb Decl., Ex. A at ¶¶ 50, 51, 59, 60, 65, 68 ; Gur Decl. at ¶ 12; Maldonado Decl. at ¶ 13; Mohammad Decl. at ¶ 13.

## ARGUMENT

## I.   CONDITIONAL CERTIFICATION IS APPROPRIATE

### A.   The FLSA's Opt-In Requirements

The FLSA states, in relevant part that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  In a collective action under Section § 216(b), unlike in a class action pursuant to Fed. R. Civ. P. 23, an employee is not a member of the collective until the employee affirmatively opts in to the collective action.  Id.  Thus, until similarly-situated employees file consents to opt in to this action, the statute of limitations continues to run against them on a daily basis.  Id.  Therefore, it is critical that similarly-situated employees be afforded notice and an opportunity to opt in at the outset of the action, as their claims are being reduced and/or extinguished by the passage of time.

The Supreme Court affirmed the importance of potential opt-in plaintiffs receiving timely notice of their potential claims in Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989),[1]

---

[1]      While the Supreme Court's decision in Hoffman-La Roche involved a collective action under the Age Discrimination in Employment Act ("ADEA"), the analysis applies to FLSA collective actions with equal force because the ADEA specifically adopted the collective action enforcement provisions of the FLSA.  See 29 U.S.C. § 626(b); Hoffman v. Sbarro, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997).

which sets forth the requirements for bringing a collective action under the FLSA. The Court observed that a collective action authorized by Section 216(b) "allows . . . plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources," but pointed out that, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.; see also Foster v. Food Emporium, No. 99 CIV 3860 (CM), 2000 WL 1737858, *3 n.1 (S.D.N.Y. 2000) ("because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by. For this reason, it is advisable that notice be given as soon as practicable."). Indeed, it is common for courts to approve expedited notice. See Sbarro, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); see also Guan Ming Lin v. Benihana Nat'l Corp., No. 10 CIV 1335 (VM), 2010 WL 5129013 (S.D.N.Y. 2010); Lynch v. United Services Auto. Ass'n., 491 F. Supp. 2d 357, 366 (S.D.N.Y. 2007).

**B.      The Two Phase Certification Process For FLSA Collective Actions**

The Second Circuit has approved a two-step process for district courts to utilize in determining whether to proceed collectively under Section 216(b) – a "notice" stage followed by a decertification stage. See, e.g., Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).

*First*, at an early stage, the court must make an initial determination limited strictly to whether the named plaintiffs are "similarly situated" to the potential members of the FLSA collective. Id.; see also Cunningham v. Elec. Data Systems Corp.,  No. 06 CIV 3530 (RJH), 2010 WL 5076703 (S.D.N.Y. 2010) (citing Lynch, 491 F. Supp. at 368). If the named plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims

7

of a common policy or plan that violated the law," the court should facilitate notice to the

potential members of the collective.  For this reason, the initial phase is called the "notice" stage.

[2] *Myers,* 624 F. 3d at 555 (citing *Sbarro,* 982 F. Supp. at 261); see also *Spicer v. Pier Sixty LLC,*

269 F.R.D. 321, 336 (S.D.N.Y. 2010).

It is well established that the burden for demonstrating that potential plaintiffs are

"similarly situated" is very low at the notice stage.  See *Lynch,* 491 F. Supp. 2d at 368; *Morales*

*v. Plantworks, Inc.,* No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. 2006) ("The first

stage, conditional certification, requires only a 'modest factual showing' based on the 'pleadings

and affidavits' that the putative class members were 'victims of a common policy or plan that

violated the law.").  Plaintiffs merely need to provide "some factual basis from which the court

can determine if similarly situated potential plaintiffs exist." *Lynch,* 491 F. Supp. 2d at 368;

*Cunningham,* 2010 WL 5076703 at *5 (citing *Mentor v. Imperial Parking Systems, Inc.,* 246

F.R.D. 178, 181 (S.D.N.Y.2007) (at this first step, the court uses a "relatively lenient evidentiary

standard to determine whether a collective action is appropriate"); *Spicer,* 269 F.R.D. at 336

(citing *Morales,* 2006 WL 278154 at *2) ("The leniency of this requirement is consistent with the

broad remedial purpose of the FLSA").

If plaintiffs satisfy their burden of showing that "similarly situated" employees exist, the

court should conditionally certify the class and order that appropriate notice be given to putative

class members to afford them the opportunity to opt-in to the action.  *Cunningham,* 2010 WL

5076703 at *5; see also *Lynch,* 491 F.Supp. 2d at 368 (citing *Lee v. ABC Carpet & Home,* 236

---

[2]        The "notice stage" in FLSA collective actions is often referred to as "conditional
certification," borrowing the term "certification" from Fed. R. Civ. P. 23, whereby a class must
be formally "certified" to proceed collectively.  This term is somewhat of a misnomer in FLSA
actions as, unlike Rule 23, Section 216(b) of the FLSA does not have any "certification"
provision, and FLSA plaintiffs are not required to establish any of the Rule 23 categories.

F.R.D. 193, 197 (S.D.N.Y. 2006)) ("Once notice is accomplished, the action proceeds as a collective action throughout the discovery process.").

   *Second*, after a substantial period of discovery has been completed, the defendants may move for "decertification" where the district court will be asked to conduct a more stringent analysis of whether the plaintiffs who have opted-in are in fact "similarly situated" to the named plaintiffs. Myers, 624 F.3d at 555. The action may be "decertified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice. Id. The second step of the inquiry "utilizes a more stringent factual determination because the court is able to examine whether the actual plaintiffs brought into the case are similarly situated." Cunningham, 2010 WL 5076703, at *5.

### C.   Plaintiffs Have Made The Required Showing That They Are Similarly Situated To The Members Of The FLSA Collective

   As stated above, to meet the minimal burden required for conditional certification, Plaintiffs must make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." See Myers, 624 F.3d at 555 (citing Sbarro, 982 F. Supp. at 261). This burden may be "satisfied with 'substantial allegations' of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation. See Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008); Hallissey v. Am. On-line, Inc., No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

   In this case, it is indisputable that Plaintiffs and the Proposed Collective are "similarly situated." Defendants paid Plaintiffs and the Proposed Collective in a uniform and common

manner; namely, a percentage of the total fare of each trip as well as a portion of the paid gratuity. See Gottlieb Decl., Ex. A at ¶¶ 23, 28, 40, 43, 46, 50, 59; Gur Decl. at ¶¶ 12, 13, 14, 15, 16, 17; Maldonado Decl. at ¶¶ 13, 14, 15, 16, 17, 18; Mohammad Decl. at ¶¶ 13, 14, 15, 16, 17, 18. Plaintiffs and the members of the Proposed Collective worked well in excess of 40 hours per week – usually between 60 and 75 hours – but were never paid any premium overtime compensation. See Gottlieb Decl., Ex. A at ¶¶ 32, 49, 51, 52, 53, 60, 61, 62, 78, 79, 80, 84, 85, 86; Gur Decl. at ¶¶ 10, 11; Maldonado Decl. at ¶¶ 11, 12; Mohammad Decl. at ¶¶ 11, 12. Thus, the unlawful manner in which Defendants compensated Plaintiffs was uniform and common to all other members of the Proposed Collective. Gur Decl. at ¶ 12; Maldonado Decl. at ¶ 13; Mohammad Decl. at ¶ 13. This amply satisfies the "modest factual showing" required to obtain conditional certification at this stage of the proceedings. See Myers, 624 F.3d at 555 (citing Sbarro, 982 F. Supp. at 261).

However, Plaintiffs can produce substantial additional evidence establishing the required factual nexus between Plaintiffs and the members of the Proposed Collective. More specifically,

(i)      In addition to the failure to pay overtime, Plaintiffs and all Drivers/Chauffeurs were subject to the same compensation scheme whereby Defendants told Plaintiffs and all Drivers/Chauffeurs that they would be compensated with a percentage of the fare paid by a customer and the entire gratuity, but then misrepresented the amount of the fares and gratuities and compensated Plaintiffs and the Proposed Collective at an artificially reduced rate. See Gur Decl. at ¶¶ 13, 14, 15; Maldonado Decl. at ¶¶ 14, 15, 16; Mohammad Decl. at ¶¶ 14, 15, 16. See e.g., Fasanelli v. Heartland Brewery, Inc., 516 F.Supp.2d 317, 322 (S.D.N.Y. 2007) (granting conditional certification where employees were subject to same time keeping practices and employees alleged variations between actual time worked and time recorded).

(ii)     Plaintiffs and all Drivers/Chauffeurs were uniformly misclassified as "independent contractors" throughout the duration of the Collective Period and paid on a Form 1099 rather than a Form W2. See Gur Decl. at ¶¶ 18, 19; Maldonado Decl. at ¶¶ 19, 20; Mohammad Decl. at ¶¶ 19, 20. See Ouedraogo v. A-1 Intern. Courier Service, Inc., 2013 WL 3466810 at * 2 (S.D.N.Y. 20103) (finding all individuals "treated and/or classified as 'independent

contractors" to be similarly situated for purposes of class certification, where plaintiffs alleged that employees were misclassified as independent contractors); <u>Lee v. ABC Carpet & Home</u>, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (finding group similarly situated where "plaintiff sufficiently alleged a common policy or plan of the Defendants' failure to pay overtime wages, misclassification as independent contractors rather than employees, and alleged a factual nexus between his circumstances and the circumstances of a number of identified individuals").

(iii)     Starting in 2012, Defendants required some individuals to execute an identical purported "independent contractor" agreement, in an attempt to shield Defendants from having to comply with the wage laws. <u>See</u> Maldonado Decl. at ¶ 10; Mohammad Decl. at ¶ 10.[3]

(iv)     Starting in 2012, Defendants required some individuals, to execute a revised "Affiliate Agreement" purporting to impose the same terms and conditions of employment. <u>See</u> Maldonado Decl. at ¶ 23; Mohammad Decl. at ¶ 23.

(v)     Plaintiffs and all members of the Proposed Collective were purportedly subject to the terms contained within a document entitled "Drivers Rules, Regulations and Fines," during the period of time those purported policies were purportedly in effect. <u>See</u> Gur Decl. at ¶ 24; Maldonado Decl. at ¶ 26; Mohammad Decl. at ¶ 26.

(vi)     Plaintiffs and all Drivers/Chauffeurs were purportedly subject to the same "Taxi & Limousine Rules for Smoking, Animals and Phones for Drivers," during the period of time those purported policies were purportedly in effect. <u>See</u> Gur Decl. at ¶ 22; Maldonado Decl. at ¶ 24; Mohammad Decl. at ¶ 24.

(vii)     Defendants provided periodic statements to all Drivers/Chauffeurs containing information regarding, *inter alia*, their routes, rates, tolls, gratuity and waiting time during that period (the "Transaction Logs"). All Drivers/Chauffeurs received Transaction Logs that were identical in form. <u>See</u> Gur Decl. at ¶ 20; Maldonado Decl. at ¶ 21; Mohammad Decl. at ¶ 21.

(viii)     Plaintiffs and all Drivers/Chauffeurs used identical invoices with a "Ben's Luxury Car & Limousine Service" logo. <u>See</u> Gur Decl. at ¶ 21; Maldonado Decl. at ¶ 22; Mohammad Decl. at ¶ 22.

---

[3]     Plaintiffs dispute whether many of the purported terms contained within the various "agreements" and policy documents were in fact bona fide terms that were enforced or adhered to in any manner. However, at this stage, the mere fact that Defendants provided Plaintiffs and the members of the Proposed Collective with identical documents with identical terms, serves to highlight that they were subjected to common policies and practices sufficient to demonstrate the "modest factual showing" that all Drivers/Chauffeurs were similarly situated.

(ix)    Plaintiffs and all Drivers/Chauffeurs had identical job duties.  See Gur Decl. at ¶ 23; Maldonado Decl. at ¶ 25; Mohammad Decl. at ¶ 25.  See Pippins v. KPMG LLP, 2012 WL 19379 at *9 (S.D.N.Y. 2012) (finding group to be similarly situated where their job duties were "similar in all relevant respects")

Plaintiffs and the members of the Proposed Collective are clearly "similarly situated," given the host of common and unlawful policies they were subjected to, the factual nexus between them and the resultant violations of the FLSA perpetrated against them.  Accordingly, this Court should conditionally certify the requested FLSA Collective and authorize court-facilitated notice of this action.

## II.    COURT-AUTHORIZED NOTICE IS NECESSARY AND APPROPRIATE

In connection with conditionally certifying this collective action, Plaintiffs also respectfully request that the Court authorize that notice of this action be sent to all potential members of the Proposed Collective ("Notice of Pendency") and posted in a conspicuous place in the workplace.

The Second Circuit has recognized that, district courts "have discretion, in appropriate cases, to implement [216(b)] by facilitating notice to potential plaintiffs" of the pendency of the action and their opportunity to opt-in as represented plaintiffs.  Myers, 624 F.3d at 554 (citing Hoffmann-La Roche, 493 U.S. at 169).  Furthermore, the Second Circuit has held that "it makes more sense, in light of the 'opt-in' provision of § 216 (b) of the Act . . . to read the statute as permitting, rather than prohibiting, notice in appropriate cases."  Braunstein v. E. Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978).  Moreover, the Supreme Court has expressed a clear preference for court-administered notice in opt-in actions: "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."  Hoffman-LaRoche, 493 U.S. at 172.

Moreover, Plaintiffs respectfully request that Defendants post the Notice of Pendency in a conspicuous location at Defendants' place of business advising current employees who are members of the Proposed Collective of the pendency of this action.  The Second Circuit has frequently found this to be an appropriate measure in conjunction with the notice sent to all members of the Proposed Collective.  See Gambino v. Harvard Protection Services LLC, 2011 WL 102691 at *3 (S.D.N.Y. 2011) (requiring notice of an action based on FLSA and NYLL violations to be posted in defendant's chief place of business); Sherrill v. Sutherland Global Services, Inc., 487 F.Supp.2d 344, 351 (W.D.N.Y. 2007) (finding that mailing notices AND posting notice of the action in a conspicuous location in each of defendants call centers struck "appropriate balance between ensuring adequate notification, while also minimizing any disturbance to [defendant's] workplace").

As previously noted, until the absent members of the Proposed Collective file consents to opt-in to this action, the statute of limitations is running against them on a daily basis.  See 29 U.S.C. § 216(b).  Accordingly, the timing of the notice given to putative members of the Proposed Collective is of great significance.  See Foster, 2000 WL 1737858, *3 n.1 ("because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by.  For this reason, it is advisable that notice be given as soon as practicable."); Sbarro, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); see also Guan Ming Lin, 2010 WL 5129013, at *8; Lynch, 491 F. Supp. 2d at 367.

Equally important, similarly situated employees will remain unaware of the availability of this cost-effective means of enforcing their rights until they receive notice of this action.  The primary benefit of collective actions under the FLSA – namely, the pooling of resources to lower

13

individual costs – could very well play a decisive role in whether a similarly situated employee chooses to enforce his or her rights under the FLSA. Thus, these potential opt-in plaintiffs should be made aware of this avenue of enforcement as soon as possible so as to advise them of their rights to join this action.

Plaintiffs have proposed a Notice of Pendency and Plaintiff Consent Form consistent with prior notices routinely approved by courts in the Second Circuit. See Gottlieb Decl., Ex. C. Plaintiffs respectfully request that the Court approve the attached Notice of Pendency and Plaintiff Consent Form, advising all members of the Proposed Collective of their right to join this collective action.

## III.   EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION

To provide all potential opt-in plaintiffs with notice of the pendency of this action, Plaintiffs require the names and contact information for those individuals. See Hoffman-La Roche, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."); Lynch, 491 F. Supp. 2d at 371 (explaining that "identification [of similarly situated employees] is necessary so that [plaintiff] can provide them with notice of this action"). Without this information, Plaintiffs will be unable to inform other similarly situated persons of the pendency of this action.

Plaintiffs respectfully request that the Court direct Defendants to produce the names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment for all persons employed by Defendants as a Driver, Chauffer or similar position from a period of six years prior to the filing of this Complaint to the present. In interests of judicial economy, courts in the Second Circuit have regularly permitted notice to be sent to potential opt-in plaintiffs who may have viable state law claims within the six year statute of

limitations period, even if some of those plaintiffs' FLSA claims might be time barred.  See

Raniere v. Citimortgage, Inc., 827 F.Supp. 2d. 294, 327 (S.D.N.Y. 2011) (permitting "Plaintiffs

to obtain the relevant contact information going back for a six-year period"); Avila v. Northport

Car Wash, Inc., No. 10-cv-2211 (LDW) (AKT), 2011 WL 833642 (E.D.N.Y. 2011) (quoting

Cano v. Four M Food Corp., No. 08 CV 3005, 2009 WL 5710143, at *10 (E.D.N.Y. 2009) ("I

find it appropriate and in the interest of judicial economy in this case to allow the Plaintiffs to

obtain the relevant contact information going back for a six-year period even if some recipients

of the notice will have claims that are time-barred under the FLSA."); Harrington v. Educ.

Mgmt. Corp., 146 Lab. Cas. (CCH) 34554 (S.D.N.Y. 2002) ("The Court authorizes notice to go

back six years with respect to those similarly situated employees who worked in the defendants'

New York facilities, while notice for all other employees outside the state to extend three

years."); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 310 (S.D.N.Y. 1998) (ordering

disclosure of six years of employee contact information in hybrid FLSA and NYLL action).

 However, at a bare minimum, Plaintiffs respectfully request the contact information for

the members of the Proposed Collective covering the period of three years prior to the filing of

this complaint through to the final disposition of this action.  The FLSA expressly permits a

three-year statute of limitations to remedy willful violations of the Act.  See 29 U.S.C. § 255(a).

As the Second Circuit has explained, "a violation is willful for purposes of the FLSA limitations

provision only if the employer knowingly violates or shows reckless disregard for the provisions

of the Act."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988).  Even where

willfulness is disputed, courts approve, at a minimum, a three year period of disclosure.  See

Davis v. Abercrombie & Fitch, No. 08 CIV 1859 (PKC), 2008 WL 4702840, *12 (S.D.N.Y.

2008) ("Courts that have faced this issue routinely approve a three-year notice period."); McBeth

v. Gabrielli Truck Sales, Ltd., No. 09 CV 04112 (LDW), 2011 WL 338123, *2 (E.D.N.Y. 2011) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action").

Thus, at a minimum, the Court should order disclosure of the names and requested contact information for a three year period.  Plaintiffs respectfully request disclosure of all contact information as soon as practicable but in no event any later than seven days following the Court's order.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court (i) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (ii) approve the mailing of the proposed Notice of Pendency and Plaintiff Consent Form to the members of the Proposed Collective; (iii) approve the posting of the Notice of Pendency in a conspicuous place in Defendants' place of business, and (iv) order Defendants to provide the names, addresses, home and mobile telephone numbers, email addresses, and dates of employment of all Drivers, Chauffeurs and similar positions from a date six years prior to the filing of this action.

Dated: July 24, 2013
    New York, New York

          Respectfully submitted,

          THOMPSON WIGDOR LLP

          By: _____
              Douglas H. Wigdor
              David E. Gottlieb

          85 Fifth Avenue
          New York, NY  10003
          Telephone:  (212) 257-6800
          Facsimile:  (212) 257-6845
          dwigdor@thompsonwigdor.com
          dgottlieb@thompsonwigdor.com

          *Counsel for Plaintiffs and the*
          *Proposed Collective*