UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ABRAHAM GUR and JORGE MALDONADO,    :
on behalf of themselves and on behalf of all other    :   Case No. 13-CV-3330 (PKC)(VVP)
similarly situated persons,    :
   :
   :
Plaintiffs,    :
   :
v.    :
   :
BEN'S LUXURY CAR AND LIMOUSINE    :
SERVICE, INC., HENRY ZILBERMAN,    :
ABRAHAM MZOUZ, AND PINHAS GADI,    :
   :
Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW IN OPPOSITION TO
# <u>PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION</u>


WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
(212) 237-1000
*Attorneys for Defendants Ben's Luxury Car and Limousine Service, Inc., Henry Zilberman, Avraham Mazouz, and Pinhas Gadi*

{10878723:1}

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

ARGUMENT ...................................................................................................................... 7

POINT I .............................................................................................................................. 7

      PLAINTIFFS HAVE NOT MADE THE NECESSARY "MODEST
      FACTUAL SHOWING" THAT THEY ARE "SIMILARLY SITUATED"
      TO A CLASS OF OTHER "EMPLOYEES" ............................................................ 7

           A.   Conditional Certification Should Not Be Granted Because
               Plaintiffs are Not Similarly Situated and Individualized
               Determinations Will Predominate ................................................................. 8

           B.   Defendants' Evidence Far Exceeds that Provided by Plaintiffs ................. 18

POINT II ........................................................................................................................... 21

      THE SCOPE AND MANNER OF NOTICE, SHOULD THE COURT
      DEEM THIS AN APPROPRIATE CASE FOR SUCH RELIEF, SHOULD
      BE LIMITED ........................................................................................................... 21

           A.   There is No Basis to Permit Notice to those Persons Who
               Performed Services as Far Back as Six Years Ago ..................................... 21

           B.   The Proposed Posting of Notice at Defendants' Business
               is Unnecessary ............................................................................................ 22

           C.   Personal Information of Putative Class Members Should
               be Limited ................................................................................................... 23

           D.   Defendants Object to Certain Language Being Included in
               or Excluded from Proposed Notice, Including a 90 Day Opt-In
               Period ......................................................................................................... 24

CONCLUSION .................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

<u>Amendola v. Bristol-Myers Squibb Co.</u>,
558 F. Supp. 2d 459 (S.D.N.Y. 2008) .................................................................10

<u>Andel v. Patterson-Uti Drilling Co.</u>,
280 F.R.D. 287 (S.D. Tex 2012)....................................................................9, 11

<u>Bamgbose v. Delta-T Group, Inc.</u>,
684 F. Supp. 2d 660 (E.D. Pa. 2010) .................................................................10

<u>Barfield v. N.Y.C. Health and Hosp. Corp.</u>,
537 F.3d 132 (2d Cir. 2008) .............................................................................10

<u>Barnwell v. Corr. Corp. of Am.</u>,
08-2151-JWL, 2008 WL 5157476 (D. Kan. Dec. 9, 2008) ....................................25

<u>Bowens v. Atl. Maint. Corp.</u>,
546 F. Supp. 2d 55 (E.D.N.Y. 2008) ............................................................20, 24

<u>Bramble v. Wal-Mart Stores, Inc.</u>,
09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 11, 2011)..........................................19

<u>Brock v. Superior Care, Inc.</u>,
840 F.2d 1054 (2d Cir. 1988) ........................................................................11-12

<u>Bunyan v. Spectrum Brands, Inc.</u>,
07-CV-0089-MJR, 2008 WL 2959932 (S.D. Ill. July 31, 2008)..............................9

<u>Byard v. Verizon W. Va., Inc.</u>,
287 F.R.D. 365 (N.D. W. Va. 2012)..................................................................25

<u>Clausman v. Nortel Networks, Inc.</u>,
02-0400-C-M/S, 2003 WL 21314065 (S.D. Ind. May 1, 2003) ...............................9

<u>Colozzi v. St. Joseph's Hosp. Health Ctr.</u>,
595 F. Supp. 2d 200 (N.D.N.Y. 2009)...........................................................7, 24

<u>Colson v. Avnet, Inc.</u>,
687 F. Supp. 2d 914 (D. Ariz. 2010) ...........................................................8, 9, 19

<u>D'Anna v. M/A-COM, Inc.</u>,
903 F. Supp. 889 (D. Md. 1995)........................................................................8

Demauro v. Limo, Inc.,
    10-cv-413-T-33-AEP, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011) ...................................9, 11, 17

Diaz v. Elec. Boutique of Am., Inc.,
    04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ...............................10, 17

Dumitrsescu v. Mr. Chow Enters., Ltd.,
    07 Civ. 3601 (PKL), 2008 WL 2600667 (S.D.N.Y. June 30, 2008) ......................................20

Eng-Hatcher v. Sprint Nextel Corp.,
    07 Civ. 7350 (BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ................................. 18-19

Enriquez v. Cherry Hill Market Corp.,
    10-CV-5616 (FB), 2012 WL 440691 (E.D.N.Y. Feb. 10, 2012) ...........................................22

Fasanelli v. Heartland Brewery, Inc.,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007) ................................................................................24

Francis v. A & E Stores, Inc.,
    06 Civ. 1638 (CS)(GAY), 2008 WL 4619858 (S.D.N.Y. Oct. 15, 2008) ..............................19

Gjurovich v. Emmanuel's Marketplace, Inc.,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003) ................................................................................24

Gordon v. Kaleida Health,
    08-cv-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009).......................................22, 23, 24

Guzelgurgenli v. Prime Time Specials, Inc.,
    883 F. Supp. 2d 340 (E.D.N.Y. 2012) ..........................................................................24, 25

Hamadou v. Hess Corp.,
    915 F. Supp. 2d 651 (S.D.N.Y. 2013) ................................................................................21

Han v. Sterling Nat'l Mortgage Co.,
    09-CV-5589 (JFB)(AKT), 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011) ............................23

Hendricks v. J.P. Morgan Chase Bank, N.A.,
    263 F.R.D. 78 (D. Conn. 2009) ..........................................................................................20

Hens v. ClientLogic Operating Corp.,
    05-CV-381S, 2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006) ..............................................20

Herman v. RSR Sec. Servs.,
    172 F.3d 132 (2d Cir. 1999) ...............................................................................................11

Hintergerger v. Catholic Health Sys.,
    08-cv-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009).........................................22, 23-24

Hoffmann v. Sbarro, Inc.,
    982 F. Supp. 249 (S.D.N.Y. 1997) ............................................................... 7

Hoffmann-La Roche Inc. v. Sperling,
    493 U.S. 165, 110 S.Ct. 482 (1989) .......................................................... 1, 7

Horne v. United Servs. Auto. Ass'n,
    279 F. Supp. 2d 1231 (M.D. Ala. 2003) ..................................................... 7, 8

In re FedEx Ground Package System, Inc.,
    662 F. Supp. 2d 1069 (N.D. Ind. 2009) ........................................................ 17

Jenkins v. TJX Co. Inc.,
    853 F. Supp. 2d 317 (E.D.N.Y. 2012) ............................................................ 8

Karvaly v. Ebay, Inc.,
    245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................... 22

Kearce v. West Telemarketing Corp.,
    575 F. Supp. 2d 1354 (S.D. Ga. 2008) ......................................................... 11

Laroque v. Domino's Pizza, LLC,
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) .......................................................... 21

Latortue v. Fast Payday Loans, Inc.,
    09-cv-171-FtM-29DNF, 2010 WL 557712 (M.D. Fla. Feb. 11, 2010) ................... 18

Levinson v. Primedia Inc.,
    02 Civ. 2222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) .................... 19

Lin v. Benihana Nat'l Corp.,
    755 F. Supp. 2d 504 (S.D.N.Y. 2010) ...................................................... 18, 20

Longcrier v. HL-A Co., Inc.,
    595 F. Supp. 2d 1218 (S.D. Ala. 2008) ........................................................ 20

Lujan v. Cabana Mgmt., Inc.,
    10-CV-755 (ILG)(RLM), 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) .............. 21, 22

MacGregor v. Farmers Ins. Exch.,
    10-CV-3088, 2011 WL 2981466 (D.S.C. July 22, 2011) ..................................... 9

Masson v. Ecolab, Inc.,
    04 Civ. 4488 (MBM), 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) .................... 24

Mendoza v. Casa de Cambio Delgado, Inc.,
    07 Civ. 2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ........................... 19

Monger v. Cactus Salon & Spa's LLC,
    08-CV-1817 (FB)(WDW), 2009 WL 1916386 (E.D.N.Y. July 6, 2009)...............................21

Morales v. Plantworks, Inc.,
    05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).................................8

Morisky v. Pub. Serv. Elec. and Gas Co.,
    111 F. Supp. 2d 493 (D.N.J. 2000) ............................................................9

Myers v. Hertz Corp.,
    624 F.3d 537 (2d Cir. 2010) ...................................................................8

Pefanis v. Westway Diner, Inc.,
    08 Civ. 002 (DLC), 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010).........................10

Pfaahler v. Consultants for Architects, Inc.,
    99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) ...................................17

Prizmic v. Armour, Inc.,
    05-CV-2503 (DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. Jun. 12, 2006) ..............8

Purdham v. Fairfax Cnty. Pub. Schs.,
    629 F. Supp. 2d 544 (E.D. Va. 2009) ........................................................8

Reich v. Homier Distrib. Co.,
    362 F. Supp. 2d 1009 (N.D. Ind. 2005) ......................................................9

Richards v. Computer Sci. Corp.,
    03-CV-00630(DJS), 2004 WL 2211691 (D. Conn. Sept. 28, 2004) .....................19

Roebuck v. Hudson Valley Farms, Inc.,
    239 F. Supp. 2d 234 (N.D.N.Y. 2002)........................................................24

Romero v. H.B. Auto. Grp., Inc.,
    11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012)....................... 10-11

Rosario v. Valentine Ave. Disc. Store, Co.,
    828 F. Supp. 2d 508 (E.D.N.Y. 2011) .......................................................20

Rutherford Food Corp. v. McComb,
    331 U.S. 722 (1947)............................................................................10

Severtson v. Phillips Beverage Co.,
    137 F.R.D. 264 (D. Minn. 1991) .............................................................8

Sexton v. Franklin First Fin., Ltd.,
    08-CV-4950 (JFB)(ARL), 2009 WL 1706535 (E.D.N.Y. June 16, 2009) ............24

Shajan v. Barolo, Ltd.,
      10 Civ. 1385 (CM), 2010 WL 2218095 (S.D.N.Y. June 2, 2010)....................................22, 23

Sheffield v. Onus Corp.,
      211 F.R.D. 411 (D. Or. 2002)...........................................................................................9

Smith v. Sovereign Bancorp, Inc.,
      03-2420, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003).........................................................7

Sobczak v. AWL Indus., Inc.,
      540 F. Supp. 2d 354 (E.D.N.Y. 2007) ..........................................................................21, 22

Summa v. Hofstra Univ.,
      715 F. Supp. 2d 378 (E.D.N.Y. 2010) ...............................................................................21

Syrja v. Westat, Inc.,
      756 F. Supp. 2d 682 (D. Md. 2010).....................................................................................9

Vasquez v. Vitamin Shoppe Indus. Inc.,
      10 Civ. 8820 (LTS)(THK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011) ...............................8

Westfall v. Kendle Int'l CPU, LLC,
      05-cv-00118, 2007 WL 486606 (N.D. W.Va. Feb. 15, 2007)................................................11

Witteman v. Wisconsin Bell, Inc.,
      09 Civ. 440 (BBC), 2010 WL 446033 (W.D. Wis. Feb. 2, 2010)..........................................25

Wooley v. Maynard,
      430 U.S. 705 (1977)........................................................................................................23

Zhang v. Bally Produce, Inc.,
      12-CV-1045 (FB)(JMA), 2013 WL 1729274 (E.D.N.Y. Apr. 22, 2013)..................................9

**STATUTES**

29 U.S.C. § 216(b).....................................................................................................7, 8, 9

29 U.S.C. § 255..............................................................................................................21

**OTHER AUTHORITIES**

Employment Tax Procedures: Classification of Workers Within the Limousine Industry,
      Mar. 13, 1997, http://www.irs.gov/pub/irs-utl/limo.pdf (last visited Aug. 5, 2013)...............12

Defendants Ben's Luxury Car and Limousine Service, Inc. ("Ben's"), Henry Zilberman ("Zilberman"), Avraham Mazouz, incorrectly named in this action as Abraham Mzouz ("Mazouz"), and Pinhas Gadi ("Gadi," and collectively, the "Defendants") submit this memorandum of law in opposition to Plaintiffs' motion for conditional certification.

## PRELIMINARY STATEMENT

On the strength of only three nearly identical, template declarations and a memorandum of law desperate to focus on the "lenient" "similarly situated" standard, the two named Plaintiffs, Abraham Gur ("Gur") and Jorge Maldonado ("Maldonado"), request the extraordinary relief of conditional certification when they cannot even demonstrate that they are "similarly situated" to one another, let alone that they are "similarly situated" to a putative class "well in excess of 200 other employees."

Conditional certification is not automatic, and although the "modest factual showing" standard is lenient, this Court should give great scrutiny to the scant evidence presented by Plaintiffs in contrast to the overwhelming evidence supplied by Defendants. The "leniency" of the applicable standard should not obscure this Court's obligation, consistent with the Supreme Court's decision in Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 110 S.Ct. 482 (1989), to determine whether this case is "appropriate" for treatment as a collective action. An examination of the parties' respective evidence reveals the fundamental and fatal flaw in Plaintiffs' request for conditional certification -- that such a determination will result in potentially hundreds of individualized inquiries involving the unique circumstances of Ben's other drivers. Indeed, that is the only logical and feasible result given that inquiries into solely the named Plaintiffs reveal that not even they are "similarly situated" to one another.

Nevertheless, Plaintiffs ask this Court to conditionally certify a class. Their motion should be denied.

## **FACTUAL BACKGROUND**

The facts relevant to this motion are set forth in the Declaration of Zilberman ("Zilberman Dec."), sworn to on August 12, 2013, and the exhibits annexed thereto. The salient facts are as follows:

### **Ben's Luxury Car & Limousine Service**

Ben's provides professional car services, including airport transfers and driving services for corporate events and special occasions throughout New York City and the surrounding Tri-State areas. (Zilberman Dec. ¶2). Ben's does not employ any drivers. Rather, Ben's retains the services of persons licensed by the New York Taxi & Limousine Commission ("TLC") to provide drivers for Ben's customers. Id. at ¶3. The TLC requires limousine owners to affiliate their vehicles with a base company for purposes of passenger safety, comfort and security. Ben's is one such base company. Pursuant to the TLC rules, a vehicle may only be driven for the base company with which it is affiliated, but the vehicle owner may affiliate other vehicles with other base companies, even with competitors. Also, the owner of an affiliated vehicle may drive the company-affiliated vehicle himself, or he may engage the services of another person to drive the vehicle. Ben's permits this arrangement, provided that the vehicle driver is licensed with the Department of Motor Vehicles and permitted to drive by the TLC. In this regard, drivers can readily be substituted by the vehicle owners for assignments. Id. at ¶4.

Ben's neither owns, nor leases, any vehicles. Each car that Ben's provides to its customers is independently-owned and operated and includes town car sedans, hybrids, late-model SUVs, stylish Mercedes and BMWs, classic black stretch limousines, 16-passenger Hummers and Cadillac Escalades, the quality of which represents a significant investment by the vehicle owners in their business and their opportunity for profit or loss. Ben's requires that the vehicles be updated, have significant capacity to transport multiple passengers and their luggage, and be clean,

safe, and upscale.  Ben's even provides financial incentives for drivers to purchase newer model vehicles.  In keeping with this arrangement, Ben's does not charge a car usage fee to the drivers. Id. at ¶5.

The TLC, not Ben's, prohibits limousine drivers from "cruising" for passengers to pick up on the street.  All Ben's does is require that the drivers comply with the law.  In that regard, customers contact Ben's to be picked up and driven to prescribed destinations.  Ben's selects among a group of limousine owners and drivers to drive its customers to the specified destinations.  Ben's does not assign specific drivers for assignments or decide which particular drivers it will utilize for a job, unless a particular driver is requested by the customer and the driver is willing to accept the assignment.  The drivers choose their own routes, subject to customer preferences. Id. at ¶6.  Ben's is required by the TLC to keep a logbook of every dispatched call.  The logbook is maintained and generated by the driver when sent out on a call. Upon completion of the assignment, the driver will submit a voucher to Ben's, which is then used for billing purposes.  Ben's uses an industry-standard voucher form, suitable for use by it or by competing services.  Ben's pays the vehicle owner a portion of the fee it charges its customers. That is, drivers are paid by the job or the assignment, not on an hourly basis.  There is no standard compensation for each set period of time worked; indeed, drivers do not use a time card to record their hours worked.  Drivers are required to pay for their own tolls and expenses, but are reimbursed for fuel charges.  Vehicle owners are also responsible for the licensing, insurance, and maintenance of their vehicles.  And, owners can make personal use of the vehicles when not performing an assignment for Ben's. Id. at ¶7.

Indeed, Ben's exerts very little control over the drivers.  Although Ben's requires that the drivers obtain and maintain specialized skills, such as hold a special driver's license, qualify for a "hack" license, and possess a general understanding of the geographical area in which Ben's

customers seek services, drivers are not required to attend company meetings or detailed training sessions.   In addition, drivers are free to obtain work which is separate and apart from work performed on behalf of Ben's.   The drivers are not required to be "on call"; they set their own schedules and are free to turn down any assignment and to work the hours they choose.   Indeed, many drivers work on a seasonal or temporary basis, choosing to work for a short period of time and then not for extended periods.   Ben's does not require that drivers meet a mandatory minimum amount of hours worked in order to maintain their active driver status, that they take breaks at specific times dictated by Ben's, that they use certain suppliers for insurance, fuel or repairs, that they greet passengers or load luggage in a specific manner (although drivers are expected to comply with the TLC rules and regulations concerning passengers and loading luggage), that they stock their vehicles with drinks, magazines, and other courtesy supplies (although they may do so at their own expense if they so choose), or that they wear a particular uniform (although drivers are expected to dress professionally pursuant to industry standards).   In this regard, the drivers' opportunity for profit or loss is entirely of their choosing. Id. at ¶8.

For passenger safety, comfort and security, Ben's also requires that its company name be displayed in the vehicle when the driver picks up a passenger (but not permanently displayed, as the vehicles are not owned by Ben's); that the driver comports with Ben's communications protocols to allow for efficient transportation services and address passenger safety concerns; and that drivers report accidents and customer complaints promptly. Id. at ¶9.   Moreover, the "Taxi and Limousine Rules for Smoking, Animals and Phones for Drivers" to which Plaintiffs cite in their declarations as being applicable to "[a]ll drivers/chauffeurs" are rules and regulations promulgated by the TLC or are a part of the New York Penal law to ensure the safety, comfort and security of passengers.   In fact, the language contained in the "Taxi Limousine Rules for Smoking, Animals and Phones for Drivers" is taken directly from Chapter 55 of the TLC's rules and

regulations concerning For-Hire Drivers, including, but not limited to, compliance with traffic laws (§55-13), open container laws (§§55-14), no smoking rules (§55-15(c)), and rules concerning transport of persons with disabilities (§55-20). The top of the document even sets forth that, "[t]he Taxi and Limousine Commission rules are as follows." Similarly, much of the language contained in the "Drivers Rules, Regulations and Fines," to which Plaintiffs also cite in their declarations as being applicable to "[a]ll drivers/chauffeurs," are rules and regulations promulgated by the TLC, including, but not limited to, luggage loading rules (§55-15(k)), rules governing use of electronic devices (§55-14(g)(1)), rules concerning the cleanliness of vehicles (§55-22) and drivers (§55-15(b)), rules governing passenger solicitation (§55-19(a)), rules prohibiting drivers from overcharging customers (§55-15(g)), and rules requiring certain items to be in the vehicle (§55-23). Id. at ¶10.

Finally, consistent with its treatment of drivers as independent contractors, Ben's issues a Form 1099 to each driver who performs services for it. Ben's does not issue a Form W-2. Each driver is responsible to pay for the taxes in connection with the payments received from Ben's. Ben's does not provide health insurance, retirement benefits, worker's compensation coverage, unemployment insurance, pension plan, or vacation days. Id. at ¶11.

### Plaintiff Gur

Gur is the principal of Plaza International Limousine Service, Inc. ("Plaza International"). Ben's retained Plaza International, not Gur individually, to drive for Ben's customers. This in and of itself is different from the manner in which Ben's usually does business with drivers. Most of the drivers own their vehicles individually. As a result, Ben's issued 1099s to Plaza International, not Gur. Indeed, Plaza International accepted the 1099s that Ben's provided to it, without objection, for years. Id. at ¶14. In addition, Plaza International, through Gur, provided driving assignments for its customers to Henry Limousine, another limousine company with which

Zilberman is affiliated. Specifically, when Plaza International did not have drivers available to service its own customers, it contracted with Henry Limousine to provide driving services for them. Again, this was unlike Ben's relationships with other drivers; drivers other than Gur did not refer business, they only drove Ben's customers. Id. at ¶15. Additionally, Gur's assertion in his declaration that he "worked approximately 60 to 75 hours per week" throughout his "employment" with Ben's is completely false. The statements of services rendered clearly reflect that there were many months in which Gur only worked several days *per month*. Thus, any assertion that Gur worked the same number of "hours per week" as "all other Drivers/Chauffeurs" is patently false. Id. at ¶16.

**Plaintiff Maldonado**

Maldonado acted as a driver for certain of Ben's customers from 2001 through April 2013. Maldonado was also unlike most of the drivers for Ben's, although in ways different from Gur. In fact, Maldonado had two primary customers, each of whom was a senior level executive in the banking industry. Maldonado served as their primary driver. He communicated with the customers directly, scheduled his own jobs, chose his own hours, and, at the end of the week, would provide Ben's with a voucher identifying the assignments he performed for these customers. Ben's would then bill them for Maldonado's services. In essence, Ben's functioned as a billing and collection agent for Maldonado. Ben's would bill these customers, collect the payment, then pay Maldonado a portion of the amount collected. Maldonado drove these two customers so often that, from 2007 through early 2013, Maldonado received $510,149.30 from Ben's. Id. at ¶18. In early 2013, one of Maldonado's customers moved out of New York City, and thereby ceased using Maldonado to drive him. Shortly thereafter, Maldonado complained to Ben's about reimbursement for fuel surcharges. As a result of this dispute, Maldonado ceased acting as a driver for Ben's customers. Shortly thereafter, the instant suit was filed. Id. at ¶19.

Ben's does not have these types of arrangements with its other drivers. Id. at ¶20.  Gur and Maldonado are not similarly situated to each other, or to the drivers retained by Ben's such that conditional certification should be denied. Id. at ¶21.

**ARGUMENT**

**POINT I**

**PLAINTIFFS HAVE NOT MADE THE NECESSARY
"MODEST FACTUAL SHOWING" THAT THEY ARE
"SIMILARLY SITUATED" TO A CLASS OF OTHER "EMPLOYEES"**

A party may bring a collective action under the Fair Labor Standards Act ("FLSA") on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b).  District courts "have discretion, *in appropriate cases*, to implement" the collective action mechanism under Section 216(b) "by facilitating notice to potential plaintiffs." Hoffmann-La Roche, 493 U.S. at 169 (emphasis added).  Thus, a district court may decide whether conditional certification and notice are appropriate. Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997); Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1233 (M.D. Ala. 2003)("[t]he power to authorize notice must [ ] be exercised with discretion and only in appropriate cases")(citations omitted); see also Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009)(a court must "take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against an FLSA claim"); cf., Smith v. Sovereign Bancorp, Inc., 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003)(conditional certification should be avoided where it places a substantial and expensive burden on a defendant to provide information about employees who would clearly be established as outside the class if even minimal class-related discovery was conducted).

"In recognizing the ability of lower courts to facilitate notice in appropriate cases, the Supreme Court emphasized the efficiency gained by grouping common issues of law and fact

arising from the same [ ] activity into a single proceeding." <u>Purdham v. Fairfax Cnty. Pub. Schs.</u>, 629 F. Supp. 2d 544, 549 (E.D. Va. 2009)(citation and quotation marks omitted).  Common issues of law and facts are necessary because without them "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." <u>Horne</u>, 279 F. Supp. 2d at 1234 (citation omitted).

Conditional certification is by no means automatic. <u>Colson v. Avnet, Inc.</u>, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); <u>see also</u> <u>Jenkins v. TJX Co. Inc.</u>, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)("While the burden on the plaintiff at the conditional certification stage is modest, it is not non-existent.")(citations and quotation marks omitted).  Nor is conditional certification a license to conduct "a frivolous fishing expedition" for potential plaintiffs. <u>Prizmic v. Armour, Inc.</u>, 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. Jun. 12, 2006); <u>D'Anna v. M/A-COM, Inc.</u>, 903 F. Supp. 889, 893-94 (D. Md. 1995)(absent a factual showing, an employer may be "unduly burdened by a frivolous fishing expedition conducted by plaintiff at employer's expense.").  "A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations." <u>Id.</u> Significantly, "[u]nsupported assertions" are not sufficient. <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010)(citation omitted); <u>see also</u> <u>Morales v. Plantworks, Inc.</u>, 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006)(conclusory allegations insufficient). Additionally, the Court should consider the evidence submitted by all parties, including that which contradicts the plaintiff's allegations. <u>Vasquez v. Vitamin Shoppe Indus. Inc.</u>, 10 Civ. 8820 (LTS)(THK), 2011 WL 2693712, at *4 n.2 (S.D.N.Y. July 11, 2011).

### A.    Conditional Certification Should Not Be Granted Because Plaintiffs Are Not Similarly Situated and Individualized Determinations Will Predominate

"[A]s a matter of sound case management, a court should, before [granting certification], make a preliminary inquiry as to whether a manageable class exists." <u>Severtson v. Phillips</u>

Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991). It follows logically that before certification is granted, Plaintiffs must at least present a plausible theory that their claims, and those of purportedly hundreds of "other employees," can be adjudicated on a representational basis. Numerous courts have held that if individualized determinations are likely to predominate, collective action will hinder, rather than promote efficient case management, and thus certification should be denied.[1]

In Colson, the court opined, "[i]f it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence . . . . [s]uch a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry." 687 F. Supp. 2d at 927; cf., Zhang v. Bally Produce, Inc., 12-CV-1045 (FB)(JMA), 2013 WL 1729274, at *4 (E.D.N.Y. Apr. 22, 2013)(in denying conditional certification, the court opined that "my issue is with the quality of plaintiff's evidence"). "[W]here a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees

_____

[1] Andel v. Patterson-Uti Drilling Co., 280 F.R.D. 287, 290 (S.D. Tex 2012)("Courts have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required would eliminate the economy of scale envisioned by the FLSA collective action procedure.")(citations and internal quotation marks omitted); MacGregor v. Farmers Ins. Exch., 10-CV-3088, 2011 WL 2981466, at *5 (D.S.C. July 22, 2011)("The necessity for independent inquiries into each alleged violation makes collective action likely to hinder rather than promote judicial economy."); Demauro v. Limo, Inc., 10-cv-413-T-33-AEP, 2011 WL 9191, at *4 (M.D. Fla. Jan. 3, 2011)(an "individualized assessment eviscerates all notions of judicial economy that would otherwise be served by conditional class certification"); Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686-87 (D. Md. 2010)(conditional certification inappropriate where multiple claims cannot be adjudicated efficiently because they would require "substantial individualized determinations for each class member")(citations omitted); Bunyan v. Spectrum Brands, Inc., 07-CV-0089-MJR, 2008 WL 2959932, at *10 (S.D. Ill. July 31, 2008)("[i]n light of the need for individualized inquiries, it should be no surprise that certification of a collective action in this particular case would make the litigation unmanageable and inefficient."); Reich v. Homier Distrib. Co., 362 F. Supp. 2d 1009, 1013 (N.D. Ind. 2005)(finding highly individualized, fact-specific inquiries negated FLSA collective certification); Clausman v. Nortel Networks, Inc., 02-0400-C-M/S, 2003 WL 21314065, at *4-5 (S.D. Ind. May 1, 2003)(individual inquiry necessary to determine proper classification, and thus certification denied); Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Or. 2002)(denying certification where "each claim would require extensive consideration of individualized issues" and "be mired in particularized determinations [ ], rather than collective consideration of common questions of law and fact"); Morisky v. Pub. Serv. Elec. and Gas Co., 111 F. Supp. 2d 493, 499 (D.N.J. 2000)("[t]he individual nature of the inquiry required make[s] collective treatment improper").

are not entitled under the FLSA [ ] a court may refuse to authorize notice." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008); accord Pefanis v. Westway Diner, Inc., 08 Civ. 002 (DLC), 2010 WL 3564426, at *3 (S.D.N.Y. Sept. 7, 2010)(citations omitted); see also Diaz v. Elec. Boutique of Am., Inc., 04-CV-0840E(SR), 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005)(where plaintiffs are not "similarly situated" *to one another or to anyone else*, refusing to conditionally certify)(emphasis added).

Here, the primary dispute centers on whether Plaintiffs are "employees" within the meaning of the FLSA, or whether they are independent contractors who fall outside the provisions of the Act. Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947)(independent contractors are not employees under the FLSA and thus are excluded from the Act's requirements); Barfield v. N.Y.C. Health and Hosp. Corp., 537 F.3d 132, 140-41 (2d Cir. 2008)(stating that an employer-employee relationship must exist for liability purposes under the FLSA). Therefore, although the ultimate issue of whether Plaintiffs are employees or independent contractors is not presently before the Court, the nature of the evidence that will be adduced to answer that question is critical to the determination of whether others are similarly situated to Plaintiffs. In fact, based on the evidence submitted by Defendants, *infra*, the named Plaintiffs themselves are not even similarly situated *to one another*, let alone similarly situated to a purported class of other "employees." See Bamgbose v. Delta-T Group, Inc., 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010)("[t]he Court must analyze whether the [workers] are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors . . . . it must determine whether the proof to demonstrate that the workers are employees or independent contractors can be applied to the class as a whole.")(citations and quotation marks omitted); Romero v. H.B. Auto. Grp., Inc., 11 Civ. 386 (CM), 2012 WL 1514810, at *13 (S.D.N.Y. May 1, 2012)("the parties would first need to litigate whether Plaintiff and the putative opt-ins were

misclassified"); Andel, 280 F.R.D. at 289-90 ("[w]hen considering a motion for conditional certification of a collective action based on allegations of independent contractor misclassification, a court must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors.")(citation and quotation marks omitted, alteration in original); Kearce v. West Telemarketing Corp., 575 F. Supp. 2d 1354, 1359 (S.D. Ga. 2008)("Court agrees [ ] that the classification issue is of primary importance to this case, and will proceed to discuss the multi-factor analysis of that issue" in determining conditional certification); Westfall v. Kendle Int'l CPU, LLC, 05-cv-00118, 2007 WL 486606, at *8-9 (N.D. W.Va. Feb. 15, 2007)(evaluating similarly situated status of workers for FLSA conditional certification based on factors to determine if workers are employees).

To determine whether a driver is an independent contractor or an employee, courts employ the "economic realities" test, which is a "fact intensive" test requiring "an individualized analysis." Demauro, 2011 WL 9191, at *4. To determine the existence of an employment relationship, the Supreme Court has declared that the "overarching concern is whether the alleged employer possessed the power to control the workers in question [ ] with an eye to the 'economic reality' presented by the facts of each case." Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999)(citations omitted). As such, courts consider several factors when examining the "economic realities" of a situation, including: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59

(2d Cir. 1988)(citations omitted).  "No one of these factors is dispositive; rather, the test is based on the totality of the circumstances." Id. (citations omitted).

Further, the Internal Revenue Service set forth procedures for the classification of workers within the limousine industry.[2]  The IRS provided that the following instructions are *consistent with independent contractor status* because "they are related to the results of service to be accomplished rather than to the manner of accomplishing service, or because they are primarily related to factors such as passenger safety, comfort, and security":

> (1) [w]here and when to pick up passengers, and where to drop them off; (2) [r]easonable parameters for age, color, and capacity of vehicles and requirement that vehicle be clean, safe, and upscale; (3) [r]equirement that company logo be displayed in or on the vehicle and that driver wear a suit, white shirt, and tie; (4) [r]equirements regarding communications protocols; (5) [r]equirements regarding processing of charge slips and accounting to the company for passenger revenues that are to be divided between the driver and the company; (6) [d]ispatching protocols (e.g., allocation of jobs by geographic location of vehicle and availability of driver, or other neutral standards); and (7) [r]equirements regarding the reporting of accidents and customer complaints.

The IRS also set forth that the following instructions are *inconsistent with independent contractor status*:

> (1) [r]equirements prescribing routes of travel; (2) [r]equirements fixing work hours; (3) [r]equirement that drivers accept all jobs offered; (4) [r]equirement that drivers refrain from using vehicle for personal reasons; (5) [r]equirement that drivers use certain suppliers for insurance, fuel, or repairs; (6) [r]equirement that driver perform all services personally and not substitute other drivers; (7) [r]equirement that drivers stock their cars with specific food and drink items, reading materials, umbrellas, etc.; and (8) [r]equirements regarding how the driver should greet passengers and load passengers and luggage.

There can be no doubt that Ben's has properly classified drivers as independent contractors.  Indeed, Ben's exerts very little control over the drivers.  Ben's neither owns, nor leases, any vehicles, nor does it charge any car usage fee.  Each car that Ben's provides to its customers is independently-owned and operated. (Zilberman Dec. ¶5).  Drivers are required to pay

---

[2] EMPLOYMENT TAX PROCEDURES: CLASSIFICATION OF WORKERS WITHIN THE LIMOUSINE INDUSTRY, dated Mar. 13, 1997, http://www.irs.gov/pub/irs-utl/limo.pdf (last visited Aug. 5, 2013).

for their own tolls and expenses, and vehicle owners are responsible for the licensing, insurance, and maintenance of the vehicles. Id. at ¶7.  The TLC requires limousine owners to affiliate their vehicles with a base company for purposes of passenger safety, comfort and security, and Ben's is one such base company.  Pursuant to TLC rules, a vehicle may only be driven for the base company with which it is affiliated, but the vehicle owner may affiliate other vehicles with other base companies, even with competitors.  Also, the owner of an affiliated vehicle may drive the company-affiliated vehicle himself, or he may engage the services of another person to drive the vehicle.  Ben's permits this arrangement in which drivers can readily be substituted by the vehicle owners for assignments. Id. at ¶4.  Moreover, Ben's permits owners to make personal use of the vehicles when not performing an assignment for Ben's.  Id. at ¶7.  Ben's also does not assign specific drivers for assignments or decide which particular drivers it will utilize for a job, unless a particular driver is requested by the customer and the driver is willing to accept the assignment. Id. at ¶6.

Drivers are free to obtain work which is separate and apart from work performed on behalf of Ben's.  Drivers are not required to be "on call"; they set their own schedules and are free to turn down any assignment and to work the hours they choose.  Ben's does not require that drivers meet a mandatory minimum amount of hours worked in order to maintain their active driver status, that they take certain routes of travel, that they take breaks at specific times dictated by Ben's, that they use certain suppliers for insurance, fuel or repairs, that they stock their vehicles with drinks, magazines, and other courtesy supplies (although they may do so at their own expense if they so choose), that they wear a particular uniform (although drivers are expected to dress professionally pursuant to industry standards), that they greet passengers and load passengers luggage in a particular manner (although drivers are expected to comply with TLC rules and regulations

concerning loading of luggage), or that they attend company meetings or detailed training sessions. Id. at ¶8.

In fact, many of the rules and regulations to which Plaintiffs argue they, and all other drivers, were/are subject, are rules and regulations promulgated by the TLC, not Ben's, or are part of the penal law.  The TLC, not Ben's, prohibits limousine drivers from "cruising" for passengers to pick up on the street, from disobeying traffic and open container laws, from smoking in the vehicle, from failing to transport disabled individuals with service animals, and from using electronic devices while driving.  All Ben's does is require that the drivers comply with the law. Indeed, the language contained in the "Taxi and Limousine Rules for Smoking, Animals and Phones for Drivers," to which Plaintiffs cite in their declarations as applicable to "[a]ll drivers/chauffeurs," is taken directly from Chapter 55 of the TLC's rules and regulations concerning For-Hire Drivers, as is much of the language contained in the "Drivers Rules, Regulations and Fines," to which Plaintiffs also cite in their declarations as applicable to "[a]ll drivers/chauffeurs." Id. at ¶10.

Additionally, the independently-owned vehicles include town car sedans, hybrids, late-model SUVs, stylish Mercedes and BMWs, classic black stretch limousines, 16-passenger Hummers and Cadillac Escalades, the quality of which represents a significant investment by the vehicle owners in their business and their opportunity for profit or loss.  Ben's simply requires that the vehicles be updated, have significant capacity to transport multiple passengers and their luggage, and be clean, safe, and upscale, as is also required by the TLC.  Ben's even provides financial incentives for drivers to purchase newer model vehicles. Id. at ¶5.  The drivers' opportunity for profit or loss is entirely of their choosing in that many drivers work on a seasonal or temporary basis, choosing to work for a short period of time and then not for extended periods. Drivers also possess and maintain specialized skills, such as holding a special driver's license,

qualifying for a "hack" license, and possessing an understanding of the geographical area in which Ben's customers seek services. Id. at ¶8.

For passenger safety, comfort and security, Ben's requires that its company name be displayed in the vehicle when the driver picks up a passenger (but not permanently displayed, as the vehicles are not owned by Ben's); that the driver comports with Ben's communications protocols to allow for efficient transportation services and address passenger safety concerns; and that drivers report accidents and customer complaints promptly. Id. at ¶9.

Drivers are paid by the job or the assignment, not on an hourly basis, and there is no standard compensation for each set period of time worked; indeed, drivers do not use a time card to record their hours worked. Id. at ¶7. Ben's issues a Form 1099 to each driver who performs services for it; it does not issue a Form W-2. Each driver is responsible to pay for the taxes in connection with the payments received from Ben's, and Ben's does not provide health insurance, retirement benefits, worker's compensation coverage, unemployment insurance, pension plan, or vacation days to drivers. Id. at ¶11. As demonstrated, Defendants' contention that drivers were properly classified as independent contractors is not hollow, and there is substantial evidence supporting such a claim.

Further, any argument that Plaintiffs Gur and Maldonado are "similarly situated" to a purported class of other drivers is entirely inaccurate. Indeed, Plaintiffs Gur and Maldonado are not even "similarly situated" to one another. Gur is the principal of Plaza International. Ben's retained Plaza International, not Gur individually, to drive for Ben's customers. This in and of itself is different from the manner in which Ben's usually does business with drivers. Most of the drivers own their vehicles individually. As a result, Ben's issued 1099s to Plaza International, not Gur. Indeed, Plaza International accepted the 1099s that Ben's provided to it, without objection, for years. Id. at ¶14. In addition, Plaza International, through Gur, provided driving assignments

for its customers to Henry Limousine, another limousine company with which Zilberman is affiliated. Specifically, when Plaza International did not have drivers available to service its own customers, it contracted with Henry Limousine to provide driving services for them. Again, this was unlike Ben's relationships with other drivers; drivers other than Gur did not refer business, they only drove Ben's customers. Id. at ¶15. Additionally, Gur's assertion that he "worked approximately 60 to 75 hours per week" throughout his "employment" with Ben's is patently false, as the statements of services rendered clearly reflect that there were many months in which Gur only worked several days *per month*. Id. at ¶16.

Maldonado, on the other hand, who acted as a driver for certain of Ben's customers from 2001 through April 2013, was also unlike most of the drivers for Ben's, although in ways different from Gur. In fact, Maldonado had two primary customers, each of whom was a senior level executive in the banking industry. Maldonado served as their primary driver. He communicated with the customers directly, scheduled his own jobs, chose his own hours, and, at the end of the week, would provide Ben's with a voucher identifying the assignments he performed for these customers. Ben's would then bill them for Maldonado's services. In essence, Ben's functioned as a billing and collection agent for Maldonado. Ben's would bill these customers, collect the payment, then pay Maldonado a portion of the amount collected. Maldonado drove these two customers so often that, from 2007 through early 2013, Maldonado received $510,149.30 from Ben's. Id. at ¶18. In early 2013, one of Maldonado's customers moved out of New York City, and thereby ceased using Maldonado to drive him. Shortly thereafter, Maldonado complained to Ben's about reimbursement for fuel surcharges. As a result of this dispute, Maldonado ceased acting as a driver for Ben's customers. Shortly thereafter, the instant suit was filed. Id. at ¶19.

Ben's does not have these types of arrangements with its other drivers. Id. at ¶20. As evidenced by the facts solely with respect to the named Plaintiffs, "[i]n order to determine who is

an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's employment relationship with [Defendant]." Pfaahler v. Consultants for Architects, Inc., 99 C 6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000)("[w]here this is the case, certification under the FLSA is inappropriate.")(citations omitted); see also Demauro, 2011 WL 9191, at *3-4 (the key issue is "whether owners-operators were properly classified as independent contractors rather than employees [ ] because the FLSA only applies in the context of an employer-employee relationship, and does not apply in the instance of an independent contractor" . . . . To determine whether a driver is an independent contractor or an employee, courts employ a "fact intensive" test that "requires an individualized analysis."); In re FedEx Ground Package System, Inc., 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009)(on motion for conditional certification, "the court must take into consideration the actual history of the parties' relationship, necessitating an individualized examination of the multiple factors relating to each drivers' employment.  Because the evidence pertaining to such factors varies in material respects throughout the proposed class, there is a lack of substantial similarity among the putative class members sufficient to justify treatment as a collective action.")(citations omitted); see also Pfohl v. Farmers Ins. Grp., CV03-3080 DT (RCX), 2004 WL 554834, at *10 (C.D. Cal. Mar. 1, 2004)("the exempt or non-exempt status of hundreds of independent contractor adjusters would need to be determined on an employee-by-employee basis.  This would be inefficient and impractical, thereby defeating the purpose of a collective action.")(citation omitted).

Plaintiffs' motion for conditional certification should be denied with prejudice because "significant differences are apparent at the outset" that discovery cannot cure. Diaz, 2005 WL 2654270, at *5 n.8.  First, Plaintiffs must show that their claims present common questions of fact and law.  Yet, the named Plaintiffs cannot even prove that they are similarly situated *to one*

*another*, let alone similarly situated to a purported class of hundreds of other "employees." Plaintiffs' argument that Defendants uniformly misclassified drivers as independent contractors, without having done any analysis whatsoever with respect to their own circumstances is at best insincere and disingenuous.  Second, although each plaintiff and purported opt-in have the same position – that of a driver – the individualized analysis needed to determine whether each driver is an independent contractor or employee for FLSA purposes precludes class certification.

## B.    Defendants' Evidence Far Exceeds that Provided by Plaintiffs

Plaintiffs' evidence consists solely of three nearly identical, conclusory, and speculative declarations, all of which refer almost entirely to a single declarant's documents.  Plaintiffs' conclusory assertions that they have been "misclassified" as "independent contractors," and the pure speculation that permeates throughout the entirety of their declarations that "all drivers" were treated in the same manner, must be disregarded.[3]  Such unsupported contentions, which fail to identify any putative class members to which they purport to apply, surely cannot be considered by the Court. See Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010)("the plaintiff's supporting allegations must be specific, not conclusory.")(citation omitted); Latortue v. Fast Payday Loans, Inc., 09-cv-171-FtM-29DNF, 2010 WL 557712, at *2-3 (M.D. Fla. Feb. 11, 2010)(finding nearly identical and conclusory affidavits "disingenuous as a basis to conditionally certify a class.")(citations omitted); Eng-Hatcher v. Sprint Nextel Corp., 07 Civ. 7350 (BSJ), 2009

---

[3] Referencing Gur's declaration solely as an example, Gur sets forth the following wholly speculative assertions with respect to a purported class of hundreds of other employees, when, in fact, he can only attest to his own personal circumstances: "*[a]ll* Drivers/Chauffeurs, including myself, were treated similarly with respect to not only failure to pay overtime, but many other unlawful compensation policies," see ¶12; "[d]uring my employment, Defendants agreed to pay *all* Drivers/Chauffeurs, including myself, a percentage of the total amount of a customer fare and the total amount of gratuities paid," see ¶13; "[h]owever, *all* other Drivers/Chauffeurs, including myself, were not paid at these agreed upon rates," see ¶14; "[r]ather, Defendants misrepresented to *all* Drivers/Chauffeurs, including myself, the actual rate being charged to customers for their routes and services," see ¶15; "[d]efendants then paid *all* Drivers/Chauffeurs, including myself, at an artificially lowered, misrepresented rate," see ¶16; "*[a]ll* Drivers/Chauffeurs, including myself, used identical invoices . . .," see ¶21; "*[a]ll* Drivers/Chauffeurs, including myself, were purportedly subject to the same [rules]," see ¶22; "*[a]ll* Drivers/Chauffeurs, including myself, had identical job duties," see ¶23; and "*[a]ll* Drivers/Chauffeurs, including myself, were purportedly subject to the same [terms]," see ¶24. (emphasis added).  Maldonado's and the opt-in class participant Hussain Mohammad's declarations suffer from the same deficiencies.  All speculative and conclusory assertions, and those wholly lacking in personal knowledge, must be disregarded by the Court.

{10878723;1}                                                   18

WL 7311383 (S.D.N.Y. Nov. 13, 2009)(discounting "general statements" to support claim that other employees were similarly situated); <u>Francis v. A & E Stores, Inc.</u>, 06 Civ. 1638 (CS)(GAY), 2008 WL 4619858, at *3 n.1 (S.D.N.Y. Oct. 15, 2008)(where plaintiff "provided nothing beyond conclusory statements that other employees were similarly situated," certification not appropriate)(citations omitted); <u>Mendoza v. Casa de Cambio Delgado, Inc.</u>, 07 Civ. 2579 (HB), 2008 WL 938584, at *2-3 (S.D.N.Y. Apr. 7, 2008)(rejecting boilerplate and virtually identical affidavits and denying collective certification).

Moreover, where a plaintiff's declaration has some value regarding his or her own experience, but is otherwise "filled with statements that lack personal knowledge," such evidence does "not come close to establishing a sufficient evidentiary basis" to conclude, even preliminarily, that the plaintiff was similarly situated to a class. <u>Colson</u>, 687 F. Supp. 2d at 928-29 (where plaintiff's evidence consisted of just three declarations); <u>Bramble v. Wal-Mart Stores, Inc.</u>, 09-4932, 2011 WL 1389510, at *2-5 (E.D. Pa. Apr. 11, 2011)(plaintiffs' testimony was "largely specific to their own experiences" and did "not provide even modest evidence beyond their own speculation;" thus, such proof failed to provide a "basic or modest factual showing that the proposed recipients of opt-in notices are similarly situated to the named Plaintiff[s].")(citation omitted); <u>Richards v. Computer Sci. Corp.</u>, 03-CV-00630(DJS), 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004)(affidavits supporting motion for conditional certification must be based on "personal knowledge"); <u>Levinson v. Primedia Inc.</u>, 02 Civ. 2222 (CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003)(no conditional certification where plaintiffs failed to make a factual showing "beyond their own circumstances"). Although Plaintiffs can attest to their own experiences, they cannot accurately represent the individual circumstances of purportedly hundreds of other drivers.

Also, although not dispositive in this Circuit, it is telling that Plaintiffs provide only a single declaration, filled with speculation, from an opt-in interested in participating in this action. Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 83 (E.D.N.Y. 2008)(several other individuals expressed interest in participating as party plaintiffs); Dumitrsescu v. Mr. Chow Enters., Ltd., 07 Civ. 3601 (PKL), 2008 WL 2600667, at *6 (S.D.N.Y. June 30, 2008)(same); Hens v. ClientLogic Operating Corp., 05-CV-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006)(same with 62 declarations); Rosario v. Valentine Ave. Disc. Store, Co., 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011)(finding, *inter alia*, naming other potential opt-ins part of sufficient factual basis for conditional certification); accord Longcrier v. HL-A Co., Inc., 595 F. Supp. 2d 1218, 1234 (S.D. Ala. 2008)(30 affidavits sufficient); cf., Hendricks v. J.P. Morgan Chase Bank, N.A., 263 F.R.D. 78, 87 (D. Conn. 2009)(where plaintiffs "have offered no evidence from proposed class members themselves" plaintiffs failed to show that the proposed members of the FLSA class were "similarly situated.").

Plaintiffs' canned declarations are simply "too conclusory to establish the requisite factual nexus with [any] other members of the putative collective action." Lin, 755 F. Supp. 2d at 510. As more fully developed in Point I (A), *supra*, Plaintiffs' claims that they are "similarly situated" to a class of other "employees" is simply unsupportable, especially given that they cannot even establish that they are similarly situated to one another. Indeed, without resorting to speculative and conclusory declarations, Defendants have submitted ample evidence that (1) Plaintiffs' status is that of independent contractors, (2) Plaintiffs are not even "similarly situated" to one another, let alone similarly situated to a purported class of hundreds of others, and (3) individualized inquiries and determinations are likely to predominate. Thus, this Court should deny Plaintiffs' motion for conditional certification.

**POINT II**

**THE SCOPE AND MANNER OF NOTICE, SHOULD THE COURT DEEM THIS AN
APPROPRIATE CASE FOR SUCH RELIEF, SHOULD BE LIMITED**

For the reasons set forth above, conditional certification is not appropriate because Plaintiffs have failed to demonstrate the "modest factual showing" that they are "similarly situated" to a class of other "employees." In the event this Court is inclined to grant conditional certification, however, the Court should limit the proposed Notice.

**A.    There is No Basis to Permit Notice to those Persons Who Performed Services as Far Back as Six Years Ago**

Plaintiffs' request that the Court notice individuals who drove Ben's customers during the past six years is contrary to the three-year period that is permitted by Congress in the FLSA itself. 29 U.S.C. § 255. On numerous occasions, courts in this District have refused plaintiffs' requests to flout the FLSA's limitations period. Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)(denying six-year period); Lujan v. Cabana Mgmt., Inc., 10-CV-755 (ILG)(RLM), 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011)(three-year period); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 387 (E.D.N.Y. 2010)(rejecting six-year period and imposing a three-year period); Monger v. Cactus Salon & Spa's LLC, 08-CV-1817 (FB)(WDW), 2009 WL 1916386, at *2 (E.D.N.Y. July 6, 2009)(three-year period); Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 355 n.1 (E.D.N.Y. 2008)(three-year period); Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007)(rejecting six years and imposing three-year period). In limiting the period for notice, the Court in Lujan specifically noted that:

> The purpose of the instant motion is to notify and inform those eligible to opt in to the collective action, and time-barred former employees may not do so. This Court sees no purpose in sending such employees a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to class certification.

2011 WL 317984, at *9. Moreover, the Court in Sobczak noted that:

The longest applicable limitations period to plaintiffs' FLSA claim is three years if willful violations are established. 29 U.S.C. § 255(a). Thus, any potential plaintiff whose claim is more than three years old has a state law claim only . . . In the absence of diversity and a claim for damages in excess of $75,000 (which seems unlikely), the Court would have no subject matter jurisdiction over claims that are more than three years old since such claims would be pure state law claims. There is no reason to provide an opt-in notice to a plaintiff whose claims could not be asserted in this Court.

540 F. Supp. 2d at 364 (citation omitted).

Defendants also object to the language in the proposed Notice referencing claims under New York State law, as any such language serves only to confuse potential opt-ins whose federal claims are time barred. See Gottlieb Dec., Exh. "C" ¶¶ II, VII; Enriquez v. Cherry Hill Market Corp., 10-CV-5616 (FB), 2012 WL 440691, at *3 (E.D.N.Y. Feb. 10, 2012)(limiting notice to a three-year period from date of the Order because "notice to those who may have timely state-law claims, but whose FLSA claims are time-barred, would serve no proper purpose"). Plaintiffs even admit in the proposed Notice that claims under New York law are "not the subject of the Notice of Pendency," and thus, language referencing New York law should be excluded.

### B.     The Proposed Posting of Notice at Defendants' Business is Unnecessary

Plaintiffs ask that this Court compel Defendants to post notice in the workplace. Such request should be rejected as federal courts, including this District, have held that posting is unreasonable and unnecessary given that notice by first-class mailing, the preferred method of providing notice, would be employed. Shajan v. Barolo, Ltd., 10 Civ. 1385 (CM), 2010 WL 2218095, at *2 (S.D.N.Y. June 2, 2010); Hintergerger v. Catholic Health Sys., 08-cv-380S, 2009 WL 3464134, at *13 (W.D.N.Y. Oct. 21, 2009); Gordon v. Kaleida Health, 08-cv-378S, 2009 WL 3334784, at *11 (W.D.N.Y. Oct. 14, 2009); Karvaly v. Ebay, Inc., 245 F.R.D. 71, 91 (E.D.N.Y. 2007). Alternative forms of notification, such as posting, should not be used unless Plaintiffs prove necessity for other methods, which they have not even attempted to show. Id.

Further, employers can provide accurate mailing addresses for current employees, the only group likely to be reached by posting in an employer's workplace. Shajan, 2010 WL 2218095, at *2; Gordon, 2009 WL 3334784, at *11 ("the only group [] reached by posting are current employees, who have an interest in providing their employer with an up-to-date mailing address . . . first class mail is the 'best notice practicable' and should be sufficient to provide potential class members [ ] the notice to which they are entitled."); Hintergerger, 2009 WL 3464134, at *13 (same); see also Han v. Sterling Nat'l Mortgage Co., 09-CV-5589 (JFB)(AKT), 2011 WL 4344235, at *12 n.13 (E.D.N.Y. Sept. 14, 2011)(premature to require employer to post notice). Posting the notice is unnecessary and the request should be denied.

Additionally, Plaintiffs' request must also be rejected because such an Order would violate Defendants' First Amendment right against compulsion to disseminate a message with which one disagrees. See Wooley v. Maynard, 430 U.S. 705, 714 (1977)(First Amendment guarantee includes "the right to refrain from speaking at all."). The posting requested by Plaintiffs would be broadcast to many more individuals than necessary, including the public and administrative staff of Zilberman's other businesses, which share office space with Ben's. Thus, Plaintiffs' request should be denied.

### C.  Personal Information of Putative Class Members Should Be Limited

Plaintiffs request that Defendants produce "the names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment for all persons employed by Defendants as Driver, Chauffer or similar position." As more fully set forth, supra, first-class mailing is the preferred method of providing notice, and alternative forms should not be used unless Plaintiffs present facts showing that such methods are necessary. Other than mailing addresses, the personal information requested by Plaintiffs is unnecessary and should not be disclosed. See Hintergerger, 2009 WL 3464134, at *13 ("[defendant] need not produce phone

numbers, social security numbers, dates of birth, and e-mail addresses"); Gordon, 2009 WL 3334784, at *11 (same); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007)(defendant should not provide private information such as social security numbers, telephone numbers, work location and dates of employment).  Names and mailing addresses are sufficient. See Colozzi, 595 F. Supp. 2d at 210 (limiting discovery to names and addresses); Masson v. Ecolab, Inc., 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005)(a court has the discretion to direct a defendant to disclose names and addresses).

### D.   Defendants Object to Certain Language Being Included in or Excluded from Proposed Notice, Including a 90 Day Opt-In Period

Defendants object to the exclusion of (1) language sufficient enough to set forth Defendants' denials of Plaintiffs' claims; any notice should clearly provide that Defendants' deny any and all claims of wrongdoing and/or liability, and that Defendants contend that plaintiffs are independent contractors and not employees; see Sexton v. Franklin First Fin., Ltd., 08-CV-4950 (JFB)(ARL), 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002); (2) Defendants' counsel's contact information; (3) any explanation that opt-ins shall be subject to certain obligations, including the potential for deposition; and (4) a more prominent and clear statement that opt-ins may select their own counsel.

Defendants also object to the inclusion of any contingency arrangements, as set forth in Paragraph VII of the proposed Notice, and object to a ninety (90) day opt-in period as set forth in Paragraph IV of same.  Instead, courts regularly order opt-in periods within, at most, sixty (60) days. Guzelgurgenli v. Prime Time Specials, Inc., 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012); Bowens, 546 F. Supp. 2d at 85; Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003).  Further, although it does not appear that Plaintiffs request a "reminder" notice, should they, Defendants object, and such request should be rejected. Guzelgurgenli, 883 F.

Supp. 2d at 358 (denying request for reminder notice); <u>Byard v. Verizon W. Va., Inc.</u>, 287 F.R.D. 365, 373 (N.D. W. Va. 2012)(denying request for reminder notice as "unnecessary and potentially improper"); <u>Witteman v. Wisconsin Bell, Inc.</u>, 09 Civ. 440 (BBC), 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010)("The purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit."); <u>Barnwell v. Corr. Corp. of Am.</u>, 08-2151-JWL, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008)("notice itself is adequate to advise potential class members of their right to opt-in as plaintiffs.").[4]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion for conditional certification be denied in its entirety.

Dated: New York, New York
      August 13, 2013

                                 Respectfully submitted,

                                 **WINDELS MARX LANE & MITTENDORF, LLP**

                                 By:           /s
                                      Scott R. Matthews
                                      Shawn D. Fabian
                                 156 West 56th Street
                               New York, New York 10019
                               (212) 237-1000
                              *Attorneys for Defendants Ben's Luxury Car and Limousine Service, Inc., Henry Zilberman, Avraham Mazouz, and Pinhas Gadi*

---

[4] Defendants also request that the Court issue an Order directing Plaintiffs to provide Defendants with a list of all notices sent to potential opt-ins prior to the Court's authorization.

{10878723:1}